Hounsel v. Clements 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00111-CV







Carter Collins Hounsel, Appellant



v.



Lorraine Ann Clements, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 93-00189, HONORABLE PETER M. LOWRY, JUDGE PRESIDING







PER CURIAM


 The trial court rendered a decree divorcing appellant Carter Hounsel and appellee
Lorraine Clements, dividing their community estate, and establishing the conservatorship,
support, and possession of their child, Helena Hounsel. In its decree, the trial court appointed
Clements sole managing conservator and Hounsel possessory conservator of Helena. The court
further ordered that Hounsel was to have supervised visitation with Helena, who was then three,
until she reached five years of age. (1) Hounsel appeals only that part of the decree requiring
supervised visitation with Helena until her fifth birthday. We will affirm the trial court's decree.

 After rendering the decree, the trial court issued findings of fact and conclusions
of law. In his first point of error, Hounsel challenges the factual sufficiency of the evidence to
support the court's finding that there is evidence to support the allegation that Hounsel had
sexually abused his daughter by a prior marriage. Hounsel further argues that, because the
evidence to support this finding is factually insufficient, the trial court abused its discretion in
ordering supervised visitation with Helena.

 The Texas Family Code sets out a standard possession order that is presumed to
be in the best interest of the child. See Tex. Fam. Code Ann. § 14.033 (West Supp. 1995). (2) The
court may determine, however, that the standard order would be unworkable or inappropriate and
not in the child's best interest. § 14.033(k). In establishing Hounsel's possession of Helena, the
trial court deviated from the standard order, which does not require supervised visits between the
child and her possessory conservator. See § 14.033(c)--(j). 

 The entirety of fact finding six, which contains the specific finding Hounsel
challenges, follows:



6. The Court has deviated from the guidelines for standard periods of possession
as set out in Section 14.033 of the Texas Family Code because CARTER
COLLINS HOUNSEL has been accused of sexual abuse his of [sic] daughter by
a prior marriage, and there is evidence to support that accusation. CARTER
COLLINS HOUNSEL denies the abuse of said child and has never received
psychological therapy with regard to said conduct. The child who is the subject
of this case could be at risk for sexual abuse under these circumstances. Further,
the Court finds that as a result of the circumstances of this case the child the
subject of this suit is experiencing significant anxiety. The Court finds therefore
that adherence to the guidelines for possession as set out in Section 14.033 of the
Texas Family Code would be unworkable and inappropriate and not in the best
interest of the child. (3)



 In setting the terms of visitation, the trial court exercises wide discretion to
determine what is in the best interest of the child. Gillespie v. Gillespie, 644 S.W.2d 449, 451
(Tex. 1982); MacCallum v. MacCallum, 801 S.W.2d 579, 582 (Tex. App.--Corpus Christi 1990,
no writ). A trial court abuses its discretion when it acts without reference to guiding rules or
principles. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). In this case, the guiding rule is the
presumption that the standard possession order is in the child's best interest. § 14.033(k);
Panozzo v. Panozzo, 904 S.W.2d 780, 784 (Tex. App.--Corpus Christi 1995, no writ). Clements
therefore bore the burden to adduce evidence from which the trial court could reasonably conclude
that supervised visitation was in Helena's best interest.

 When, as here, the record includes a statement of facts, the trial court's findings
of fact are not conclusive, but are reviewable for legal and factual sufficiency of the evidence to
support them. Green v. Green, 850 S.W.2d 809, 812 (Tex. App.--El Paso 1993, no writ). To
review Hounsel's factual-sufficiency challenge, we consider all the evidence and will set aside the
finding only if the evidence supporting it is so weak, or the evidence to the contrary so
overwhelming, as to make it clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); Panozzo, 904 S.W.2d at 783. 

 Morgan Hounsel, Hounsel's daughter from his prior marriage to Annette Anderson,
testified by telephone deposition. Morgan, who was fifteen when she was deposed, recounted an
incident that occurred during a visitation with Hounsel when she was six. Hounsel at that time
was married to Pam Hartman. Morgan stated that while she was using the bathroom, Hounsel
came in to the bathroom, pulled her hands above her head, and put his finger in her vagina. 
When Morgan ran out of the bathroom upset and tried to call her mother, Hounsel took the phone
away and hung it up.

 Pam Hartman, who was married to Hounsel from about 1985 to 1989, also testified
by deposition. She stated that during a visit by Morgan and her sister Cassie, Morgan called for
help from the bathroom. Hartman asked Hounsel to help her, but when Morgan emerged from
the bathroom, she was crying and very scared, clung to Hartman, and asked to call her mother. 
After Hartman reached Anderson by phone and told her that Morgan was upset, Hounsel hung
the phone up and repeatedly picked and hung it up when it rang several times afterward. Hartman
testified that this incident occurred in 1985 or 1986.

 Annette Anderson testified that she was married to Hounsel from 1978 to 1984. 
Two children, Morgan and Cassie, were born to the marriage. Anderson stated that in December
1985 Morgan told her that Hounsel had touched her "private places" during a visit the preceding
August. Anderson testified that Morgan was upset for some months after the visit and
experienced a change in bathroom habits; these changes prompted her to take Morgan to a
psychologist. Although she contacted the child welfare authorities and the police, both told her
that they could not do anything about it. Anderson testified that she did not coach Morgan to say
that Hounsel had abused her.

 Hounsel testified that an event had occurred involving Morgan and him. He stated
that Morgan was visiting him and Hartman in 1985 and that Morgan made a cry while she was
in the bathroom. Hounsel remembered taking both Morgan's hands and lifting her off the toilet. 
He did not remember Morgan's being upset, but thought that he could have upset her by yelling
if the toilet were overflowing. Hounsel did not remember Morgan's wanting to call Anderson or
his disallowing it. He did not deny hanging the phone up several times that evening in the belief
that Anderson was calling. Hounsel denied molesting Morgan.

 Dr. Lorraine Baillie, a practicing psychologist who specialized in sexual abuse,
interviewed Morgan Hounsel in November 1987 and June 1988. Morgan described to her an
incident at Hounsel's house in which she was sitting on the toilet in the bathroom when Hounsel
came in, touched her vagina, and told her not to tell. Baillie's opinion, based on the interviews,
was that Morgan was telling the truth and had not been coached. Baillie did not report the abuse
because she believed that Anderson and her attorney had made reports to the child welfare
authorities. Baillie testified largely from her notes; although she could not independently recall
details of Morgan and Anderson's appearance, she could independently recall Morgan's
presentation and description of the abuse.

 Dr. Richard Wall, a clinical psychologist, evaluated Morgan on three occasions in
1988, when she was nine years old. Morgan told him of a visit to Hounsel when she was six. 
She stated that while she was in the bathroom on the toilet, Hounsel came in, pulled her hands up
with one hand, and "stuck his finger up inside" her. Morgan also stated that when she tried to
call Anderson, Hounsel caught her and hung up the receiver. He told her not to tell or she would
get in trouble. Although Wall had not tested Morgan as thoroughly for coaching as he tested
current clients, he believed that she had not been coached. Wall's opinion was that Morgan had
been sexually abused by Hounsel in the past and that, in her mind, the abuse occurred when she
was six. Wall had no record showing that he reported his belief to the child welfare authorities
and admitted that, if he did not report it, he should have. Wall independently remembered the
story Morgan told, but relied on his notes to testify as to other facts about his evaluation. 
Assuming that Hounsel had sexually abused one daughter, Wall did not recommend unsupervised
visitation with another daughter.

 Dr. Carlos Loredo, a psychologist, was appointed by the court to evaluate Clements
and Hounsel and to make recommendations on conservatorship and possession. He did not
interview Morgan. Loredo was unable to determine what occurred between Hounsel and Morgan,
but did not exclude the possibility that Hounsel had sexually abused her. If sexual abuse had
occurred, Loredo would be concerned about Hounsel's having access to any other child and he
agreed that Helena would be at high risk. But based on the information he had, Loredo did not
think that supervised visitation between Hounsel and Helena was in Helena's best interest. 

 Josephine Littlefield, a social worker who provided therapy to Helena, testified that
if Hounsel had sexually abused Morgan, Helena was at a very high risk of its happening again and
that Hounsel's access to her should be supervised. 

 Dana Williamson, a caseworker with the Texas Department of Protective and
Regulatory Services, spoke to Helena during a therapy session with Littlefield. Williamson stated
that if Hounsel had sexually abused Morgan, Helena would be at substantial risk and that
Hounsel's visits with Helena should be supervised.

 Allison Wilcox, a psychologist who had been treating Hounsel, testified that the
scenario in which the sexual abuse of Morgan allegedly occurred was not the kind often heard in
sexual abuse cases. Based on her therapy with Hounsel, Wilcox was not concerned for Helena's
safety, but was concerned about Helena's ability to express herself emotionally.

 Hounsel also introduced in evidence a transcribed telephone conversation between
himself and Charlie McDaniel, who had done construction work for Anderson and had been
involved with her romantically. McDaniel stated that, when she talked with him, Morgan could
not remember any incident of sexual abuse. According to McDaniel, Anderson claimed to have
made her children believe that Hounsel molested Morgan. McDaniel said that everything Morgan
remembered had been planted by Anderson.

 Having considered the entire record, we conclude that the court's finding that
evidence supports Morgan's accusation of sexual abuse is not factually so weak, nor is the
evidence to the contrary so overwhelming, as to make it clearly wrong and unjust. Although
Hounsel attempts on appeal to discredit Anderson's testimony, the credibility of the witnesses is
strictly within the province of the finder of fact. Benoit v. Wilson, 239 S.W.2d 792, (Tex. 1951);
Green, 850 S.W.2d at 812. Because the evidence supports the finding, the court could reasonably
have determined that supervised visitation was in Helena's best interest. Finding no abuse of
discretion in the court's order, we overrule point one.

 In point of error two, Hounsel argues that the trial court erred in failing to make
written findings regarding deviation from the standard possession order. If a party files a written
request for findings within ten days after the hearing, the court shall state in the order the specific
reasons for all deviations from the standard possession order. § 14.033(k). Because Hounsel
failed to file his request within ten days of the hearing, the court did not err in omitting findings
from the decree. The court nevertheless filed separate findings of fact well within the time for
perfecting appeal. Hounsel relied on these findings to challenge the visitation provisions of the
decree and was therefore able to properly present his case to this Court. E.g., Voros v. Turnage,
856 S.W.2d 759, 761 (Tex. App.--Houston [1st Dist.] 1993, writ denied) (appellate court ordered
supplemental findings of fact when order lacked reasons for deviation despite proper request). 
We overrule point two.

 In his third point of error, Hounsel contends that the trial court erroneously
overruled his motion for pretrial conference. In his motion, Hounsel requested that Morgan and
Anderson not be allowed to testify unless they submitted to psychological evaluations. The record
contains no ruling by the court on this motion. In the absence of a ruling, Hounsel has preserved
nothing for review. Tex. R. App. P. 52(a). We overrule point three.

 In point of error four, Hounsel asserts that the trial court erroneously denied his
motion to reopen testimony. The testimony Hounsel wished to present concerned the validity of
allegations that Hounsel had sexually abused Helena. The court did not base its visitation order
on any allegation that Helena had been abused, and we have determined that the evidence
supporting the allegation that Hounsel abused Morgan sufficiently supports the order. Because
any error in refusing to reopen the testimony was harmless, we overrule point four.


 We affirm the decree of the trial court.


Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: December 6, 1995

Do Not Publish
1. [1]  Helena will turn five in March 1996.
2. [2]  All citations in this opinion are to the version of the Texas Family Code applicable to this
proceeding. The Family Code was recodified effective April 20, 1995; proceedings pending
before that date are governed by the law in effect when the proceeding was begun. Act of Apr.
6, 1995, 74th Leg., R.S., ch. 20, §§ 3(a), 4, 1995 Tex. Sess. Law Serv. 113, 282 (West). For
convenience, we will refer to the version of the Code in effect here by section number only.
3. [3]  The wording of Hounsel's point of error encompasses more of the factors the court set out
in fact finding six to justify supervised visitation than we have stated above. Because Hounsel's
argument under this point addresses only the factual sufficiency of the finding that the allegation
of prior sexual abuse is supportable, we will address the argument presented. Tex. R. App. P.
74(f); Johnson v. Garza, 884 S.W.2d 831, 836 (Tex. App.--Austin 1994, writ denied).



 cases. Based on her therapy with Hounsel, Wilcox was not concerned for Helena's
safety, but was concerned about Helena's ability to express herself emotionally.

 Hounsel also introduced in evidence a transcribed telephone conversation between
himself and Charlie McDaniel, who had done construction work for Anderson and had been
involved with her romantically. McDaniel stated that, when she talked with him, Morgan could
not remember any incident of sexual abuse. According to McDaniel, Anderson claimed to have
made her children believe that Hounsel molested Morgan. McDaniel said that everything Morgan
remembered had been planted by Anderson.

 Having considered the entire record, we conclude that the court's finding that
evidence supports Morgan's accusation of sexual abuse is not factually so weak, nor is the
evidence to the contrary so overwhelming, as to make it clearly wrong and unjust. Although
Hounsel attempts on appeal to discredit Anderson's testimony, the credibility of the witnesses is
strictly within the province of the finder of fact. Benoit v. Wilson, 239 S.W.2d 792, (Tex. 1951);
Green, 850 S.W.2d at 812. Because the evidence supports the finding, the court could reasonably
have determined that supervised visitation was in Helena's best interest. Finding no abuse of
discretion in the court's order, we overrule point one.

 In point of error two, Hounsel argues that the trial court erred in failing to make
written findings regarding deviation from the standard possession order. If a party files a written
request for findings within ten days after the hearing, the court shall state in the order the specific
reasons for all deviations from the standard possession order. § 14.033(k). Because Hounsel
failed to file his request within ten days of the hearing, the court did not err in omitting findings
from the decree. The court nevertheless filed separate findings of fact well within the time for
perfecting appeal. Hounsel relied on these findings to challenge the visitation provisions of the
decree and was therefore able to properly present his case to this Court. E.g., Voros v. Turnage,
856 S.W.2d 759, 761 (Tex. App.--Houston [1st Dist.] 1993, writ denied) (appellate court ordered
supplemental findings of fact when order lacked reasons for deviation despite proper request). 
We overrule point two.

 In his third point of error, Hounsel contends that the trial court erroneously
overruled his motion for pretrial conference. In his motion, Hounsel requested that Morgan and
Anderson not be allowed to testify unless they submitted to psychological evaluations. The record
contains no ruling by the court on this motion. In the absence of a ruling, Hounsel has preserved
nothing for review. Tex. R. App. P. 52(a).